# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A. and
J.P. MORGAN SECURITIES LLC,

      Plaintiffs,

vs.

DANIEL J. WIRTANEN, JR. and
AIMEE S. O'DONNELL,

      Defendants.

Civil Action No. 15-cv-11929-DPH-MKM
Hon. Denise Page Hood

_____

ABBOTT NICHOLSON, P.C.
By:   Timothy J. Kramer (P36223)
And:  Daniel G. Kielczewski (P42875)
*Attorneys for Plaintiffs*
300 River Place, Suite 3000
Detroit, Michigan 48207
(313) 566-2500 / (313) 566-2502 Fax
tjkramer@abbottnicholson.com
dgkielczewski@abbottnicholson.com

PADUANO & WEINTRAUB LLP
Leonard Weintraub (Reg. No. 2161479)
*Co-Counsel for Plaintiffs*
1251 Avenue of the Americas, 9th Floor
New York, New York 10020
(212) 785-9100 / (212) 785-9099 Fax
lw@pwlawyers.com

_____

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

## **TABLE OF CONTENTS**

ISSUES PRESENTED............................................................................ ii

CONTROLLING/MOST APPROPRIATE AUTHORITY
FOR THE RELIEF REQUESTED ........................................................ iii

TABLE OF AUTHORITIES ................................................................iv

LIST OF ATTACHED CASES ..............................................................ix

I.      PRELIMINARY STATEMENT ...................................................1

II.     ARGUMENT AND AUTHORITIES ...........................................4

        A.      JPMORGAN IS ENTITLED TO SEEK
                TEMPORARY INJUNCTIVE RELIEF IN
                THIS COURT PENDING ARBITRATION.........................4

        B.      JPMORGAN IS ENTITLED TO A
                TEMPORARY RESTRAINING ORDER ...........................5

        C.      JPMORGAN IS ENTITLED TO A
                TEMPORARY INJUNCTION .........................................6

                1.      Judicial Standard ...............................................6

                2.      Courts Have Uniformly Recognized The
                        Right Of A Securities Firm To Injunctive
                        Relief Under Similar Circumstances .........................7

                3.      JPMorgan Satisfies All Requirements For Injunctive Relief .....8
                        a.      JPMorgan is Likely to Succeed on the Merits.................8
                        b.      In the Absence of an Injunction,
                                JPMorgan will Suffer Irreparable Harm.......................13
                        c.      The Threatened Injury to JPMorgan
                                Outweighs the Potential Harm to Defendants ...............16
                        d.      An Injunction will Not Harm the Public Interest ..........19

III.    CONCLUSION AND PRAYER ...............................................20

i

## <u>ISSUES PRESENTED</u>

1.    Can the Court grant interim injunctive relief in an arbitrable dispute pending arbitration between the parties?

> <u>Plaintiffs' Position</u>:  Yes, the Court can grant interim injunctive relief – in the form of a temporary restraining order and a preliminary injunction – in an arbitrable dispute pending arbitration between the parties, as long as the traditional prerequisites for injunctive relief are satisfied.

2.    Should the Court grant injunctive relief to prohibit the solicitation of the former employer's clients and to protect the misappropriation of confidential client information prior to an adjudication on the merits, where each defendant signed a confidentiality and a non-solicitation agreement?

> <u>Plaintiffs' Position</u>:  Yes, the Court should do so.

## <u>CONTROLLING/MOST APPROPRIATE AUTHORITY<br>FOR THE RELIEF REQUESTED</u>

Authority for the Court's ability to grant interim injunctive relief in an arbitrable dispute pending arbitration between the parties:

> <u>Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.</u>, No. 13-CV-15189, 2014 U.S. Dist. LEXIS 18250 (E.D. Mich. Feb. 13, 2014); and

> <u>Amyotrophic Lateral Sclerosis Ass'n v. Amyotrophic Lateral Sclerosis of Mich., Inc.</u>, No. 05-73464, 2006 U.S. Dist. LEXIS 64323 (E.D. Mich. Sept. 8, 2006).

Authority for the Court's ability to grant injunctive relief to prohibit the solicitation of the former employer's clients and to protect the misappropriation of confidential client information prior to an adjudication on the merits, where each defendant signed a confidentiality and a non-solicitation agreement:

> <u>Kelly Services, Inc. v. Marzullo</u>,<br>591 F.Supp.2d 924 (E.D. Mich. 2008);

> <u>Kelly Servs. v. Noretto</u>,<br>495 F.Supp. 2d 645 (E.D. Mich. 2007);

> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran</u>,<br>67 F.Supp.2d 764 (E.D. Mich. 1999); and

> <u>Lowry Computer Products, Inc. v. Head</u>,<br>984 F.Supp. 1111 (E.D. Mich. 1997).

## TABLE OF AUTHORITIES

**Cases**                                                                                **Page**

Aggarao v. MOL Ship Mgmt. Co., Ltd.,
   675 F.3d 355 (4th Cir. 2012)...................................................................4

American Exp. Fin. Advisors Inc. v. Thorley,
   147 F.3d 229 (2d Cir. 1998)...................................................................5

Amyotrophic Lateral Sclerosis Ass'n v. Amyotrophic Lateral Sclerosis of Mich., Inc.,
   No. 05-73464,
   2006 U.S. Dist. LEXIS 64323 (E.D. Mich. Sept. 8, 2006)....................4

Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,
   511 F.3d 535 (6th Cir. 2007)...................................................................19

CIG Asset Mgmt. v. Bircoll,
   No. 13-cv-13213, 2013 U.S. Dist. LEXIS 113696
   (E.D. Mich. Aug. 13, 2013) ....................................................................6

DeLaval, Inc. v. Schmitt,
   994 F.Supp.2d 883 (W.D. Mich. 2014) ..................................................13

Estee Lauder Cos. v. Batra,
   430 F.Supp.2d 158 (S.D.N.Y. 2006).......................................................9

Fid. Brokerage Servs. LLC v. Busch,
   No. 14-10756, 2014 U.S. Dist. LEXIS 32823
   (E.D. Mich. Mar. 7, 2014)......................................................................15

Golden v. Kelsey-Hayes Co.,
   73 F.3d 648 (6th Cir. 1996).....................................................................6

Henkel Corp. v. Cox,
   386 F.Supp.2d 898 (E.D. Mich. 2005)....................................................15

IDS Life Insurance Co. v. SunAmerica, Inc.,
    958 F.Supp. 1258 (N.D. Ill. 1997),
    aff'd in part, vac. in part on other grounds,
    136 F.3d 537 (7th Cir. 1998)...............................................................................20

Ingenuit, LTD. v. Hariff,
    33 A.D. 3d 589, 822 N.Y.S. 2d 301 (2d Dep't 2006) ...........................................9

Johnson Controls, Inc. v. Odom,
    No. 13-13443, 2013 U.S. Dist. LEXIS 114593
    (E.D. Mich. Aug. 14, 2013) ................................................................................15

JPMorgan Chase Bank, N.A. v. Clark,
    No. 09-13815, 2009 U.S. Dist. LEXIS 89926
    (E.D. Mich. Sept. 29, 2009) ...............................................................................14

Kelly Services, Inc. v. Marzullo,
    591 F.Supp.2d 924 (E.D. Mich. 2008)..............................................................9, 15

Kelly Servs. v. Noretto,
    495 F.Supp.2d 645 (E.D. Mich. 2007)................................................ 9, 10, 11, 15

Kelly v. Evolution Mkts., Inc.,
    626 F.Supp.2d 364 (S.D.N.Y. 2009)....................................................................9

Kewanee Oil Co. v. Bicron Corp.,
    416 U.S. 470 (1974)...........................................................................................19

Key Safety Sys. v. Invista, S.A.R.L., L.L.C.,
    No. 08-CV-10558, 2008 U.S. Dist. LEXIS 70117
    (E.D. Mich. Sept. 16, 2008) ...............................................................................14

Kovarik v. American Family Insurance Group,
    108 F.3d 962 (8th Cir. 1997)..............................................................................12

Laethem Equip. Co. v. Deere & Co.,
    2007 U.S. Dist. LEXIS 65362 (E.D. Mich. Aug. 14, 2007) ................................10

Lowry Computer Products, Inc. v. Head,
    984 F.Supp. 1111 (E.D. Mich. 1997)...............................................................9, 12

Lynch v. Silcox,
    2001 WL 1200656 (S.D. Fla. Oct. 4, 2001).........................................................12

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran,
    67 F.Supp.2d 764 (E.D. Mich. 1999)................................................... 6, 9, 12, 17

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,
    756 F.2d 1048 (4th Cir. 1985)..................................................................7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,
    844 F.2d 72 (10th Cir. 1986)....................................................................7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall,
    836 F.Supp. 428 (W.D. Mich. 1993) ....................................................... 7, 9, 12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty,
    808 F.Supp. 1555 (S.D. Fla.1992),
    aff'd, 2 F.3d 405 (11th Cir. 1993).........................................................12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer,
    816 F.Supp. 1242 (N.D. Ohio 1992)......................................................19

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp,
    2001 WL 810749 (N.D. Fla. July 16, 2001) .......................................12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,
    999 F.2d 211 (7th Cir. 1993)...................................................................7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,
    658 F.2d 1098 (5th Cir. 1981)..................................................................7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman,
    1996 WL 707107 (D. Kan. Oct. 1, 1996) ...........................................19

MLive Media Group v. Webber,
    No. 14-cv-13148, 2014 U.S. Dist. LEXIS 123191
    (E.D. Mich. Sept. 4, 2014) ....................................................................13

Monumental Life Ins. Co. v. Stokes,
    No. 11-14847, 2012 U.S. Dist. LEXIS 42849
    (E.D. Mich. Mar. 28, 2012)...................................................................14

Muze, Inc. v. Digital On-Demand, Inc,
    123 F.Supp. 2d 118 (S.D.N.Y. 2000)....................................................9

Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.,
    No. 13-CV-15189, 2014 U.S. Dist. LEXIS 18250
    (E.D. Mich. Feb. 13, 2014) ...................................................................4

Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    1994 WL 900431 (E.D. Mich. 1994).................................... 7, 9, 12, 17

OTG Mgt., LLC v Konstantinidis,
    40 Misc. 3d 617 (Sup. Ct. N.Y. Co. 2013) ..........................................9

Ruscitto v. Merrill Lynch,
    777 F.Supp. 1349 (N.D. Tex. 1991),
    aff'd, 948 F.2d 1286 (5th Cir. 1991)...................................................12

Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    948 F.2d 128 (5th Cir. 1991) (per curiam),
    aff'd 777 F.Supp. 1349 (N.D. Tex. 1991)..............................................7

Superior Consultant Co., Inc. v. Bailey,
    2000 WL 1279161 (E.D. Mich. 2000)..................................................12

Superior Consulting Co., Inc. v. Walling,
    851 F.Supp. 839 (E.D. Mich. 1994)......................................................9

Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.,
    609 F.3d 975 (9th Cir. 2010)..................................................................4

Victory Lane Quick Oil Change, Inc. v. Darwich,
    799 F.Supp.2d 730 (E.D. Mich. 2011)........................................ 14, 19

Wells Fargo Advisors, LLC v. Carter,
    No. 1:09-cv-517, 2009 U.S. Dist. LEXIS 47672
    (W.D. Mich. June 5, 2009).....................................................................9

Yolton v. El Paso Tenn. Pipeline Co.,
   435 F.3d 571 (6th Cir. 2006)..................................................................................6

Zimmer, Inc. v. Albring,
   No. 08-CV-12484, 2008 U.S. Dist. LEXIS 50089
   (E.D. Mich. June 27, 2008)..................................................................................14

## **Statutes**

FINRA Rule 13804 ...................................................................................................1
Michigan Statute 445.1902(d) ...............................................................................10

## <u>LIST OF ATTACHED CASES</u>

1. <u>JPMorgan Chase Bank, N.A. et al. v. Lance J. Gilden,</u>
   No. 14-035428 (NY Sup. Ct. Rockland Co., November 28, 2014)

2. <u>JPMorgan Chase Bank, N.A. et al. v. Justin M. Klestinski,</u>
   No. 12 C 4051 (N.D. Ill. May 25, 2012)

3. <u>JPMorgan Chase Bank, N.A. et al. v. Alejandro J. Malespin et al.,</u>
   No. 12-151010 (NY Sup. Ct. New York Co., March 21, 2012)

4. <u>JPMorgan Chase Bank, N.A. et al. v. Gina L. DiMonda, et al.,</u>
   No. 11-6825 (NY Sup. Ct. Monroe Co., June 16, 2011)

5. <u>JPMorgan Chase Bank, N.A. et al. v. Thomas M. Lillard III, et al.,</u>
   No. 1:11-cv-2733 (N.D. Ill. April 27, 2011)

6. <u>JPMorgan Chase Bank, N.A. et al. v. Thomas D. Soderquist,</u>
   No. 11-cv-00445-WYD-CBS (D. Colo. February 24, 2011)

7. <u>JPMorgan Chase Bank, N.A. et al. v. James E. Casey,</u>
   No. 2010-cv-1597 (N.D. Ill. March 11, 2010)

8. <u>JPMorgan Chase Bank, N.A. et al. v. David G. Clark, et al.,</u>
   No. 09-13815 (E.D. Mich. September 29, 2009)

9. <u>JPMorgan Chase Bank, N.A. et al. v. Michael A. Marquez,</u>
   No. 09-022873-civ-Lenard/Garber (S.D. Fla. September 25, 2009)

10. <u>JPMorgan Chase Bank, N.A. et al. v. Donald F. Kohler, Jr., et al.,</u>
    No. 3:09-cv-677-H (W.D. Ky. September 8, 2009)

Plaintiffs JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC ("J.P. Morgan Securities") (collectively "JPMorgan" or "Plaintiffs") file this Memorandum of Law in Support of Their Application for Temporary Restraining Order and Temporary Injunction.  Plaintiffs are in the process of commencing before FINRA Dispute Resolution an arbitration proceeding seeking permanent injunctive relief against Defendants and their new employer.  Pending final determination in arbitration, Plaintiffs are entitled to seek preliminary injunctive relief from this Court, even though the merits of the dispute between the parties ultimately will be resolved in arbitration.  Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes requires a party seeking interim injunctive relief to obtain such relief from a court of competent jurisdiction.  A copy of this Rule is annexed to the Declaration of Nichole M. Baaki ("Baaki Dec.") as Exhibit A.

## I.  PRELIMINARY STATEMENT

On information and belief, in connection with their resignation from JPMorgan, Defendants improperly took with them JPMorgan's confidential client information (the "Confidential Client Information").  It appears that Defendants are already improperly using this misappropriated Confidential Client Information at Morgan Stanley, as numerous JPMorgan clients have informed JPMorgan that Defendant aggressively solicited them after they joined Morgan Stanley.

1

Defendant's post-employment activities are restricted in accordance with virtually identical Non-Solicitation Agreements, and JPMorgan's Code of Conduct. See Baaki Dec. Exhibits B, C, D and E. Defendants agreed that if they left their employment with JPMorgan, they would be restricted from (1) soliciting the JPMorgan customers they serviced at JPMorgan for one year, and (2) using, disclosing, or transmitting Confidential Client Information. Furthermore, Defendants agreed that a violation of the non-solicitation covenant "will cause immediate and irreparable injury to [JPMorgan] that cannot adequately be remedied by monetary damages," and in such event, it would be "reasonable and necessary for [JPMorgan] to seek immediate injunctive relief and/or specific performance in any court of competent jurisdiction."  Baaki Dec. Exhibits C and D, Section 10(b)(I).

At the time Defendant Wirtanen left JPMorgan, he serviced approximately 455 JPMorgan clients/households, all (or virtually all) of whom were existing JPMorgan clients at the time they were assigned to Defendant, representing approximately $167 million in client assets under management at JPMorgan, with total annual revenue of approximately $1.3 million.  Baaki Dec. ¶ 8.

On information and belief, Defendants took with them JPMorgan's Confidential Client Information and are now using such information to contact and solicit JPMorgan customers on behalf of Morgan Stanley, in violation of their obligations to JPMorgan.  Such wrongdoing threatens JPMorgan with irreparable

2

harm in a variety of ways, including present and future economic loss, disclosure of proprietary and confidential business and customer information, loss of goodwill and business reputation and injury to office stability.  For these reasons, JPMorgan asks the Court to enter a Temporary Restraining Order to restrain Defendants (and those acting in concert with them) from continuing to violate their obligations until a temporary injunction hearing may be held.  JPMorgan further asks the Court to enter a Preliminary Injunction after an evidentiary hearing.

## II.   ARGUMENT AND AUTHORITIES

### A.   JPMORGAN IS ENTITLED TO SEEK TEMPORARY INJUNCTIVE RELIEF IN THIS COURT PENDING ARBITRATION

Even where a dispute (as here) is ultimately to be resolved in arbitration, JPMorgan is entitled to injunctive relief pending the outcome in arbitration. Many courts have held that a court can grant injunctive relief in an arbitrable dispute pending arbitration, as long as the prerequisites for injunctive relief are satisfied. See, e.g., Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp., No. 13-CV-15189, 2014 U.S. Dist. LEXIS 18250, at *23 (E.D. Mich. Feb. 13, 2014); Amyotrophic Lateral Sclerosis Ass'n v. Amyotrophic Lateral Sclerosis of Mich., Inc., No. 05-73464, 2006 U.S. Dist. LEXIS 64323, at *11 (E.D. Mich. Sept. 8, 2006). See also Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 376 (4th Cir. 2012) ("where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a hollow formality. The arbitration process would be a hollow formality where 'the arbitral award when rendered could not return the parties substantially to the *status quo ante*.*"); Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 980 (9th Cir. 2010) ("the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary

4

injunctive relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process."); <u>American Exp. Fin. Advisors Inc. v. Thorley</u>, 147 F.3d 229, 231 (2d Cir. 1998) (arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits).

## B.    JPMORGAN IS ENTITLED TO A TEMPORARY RESTRAINING ORDER

During their employment with JPMorgan, Defendants expressly promised in their Non-Solicitation Agreements and JPMorgan's Code of Conduct not to solicit JPMorgan's clients, and not to misappropriate JPMorgan's confidential and trade secret information.  Specifically, Defendants agreed that for a period of one year after the termination of their employment, they would not solicit JPMorgan customers whom they serviced or became known to them at JPMorgan. Defendants, however, have violated their obligations and duties to JPMorgan. JPMorgan does not seek to bar Defendants from building a competing business. JPMorgan is instead attempting to protect its business from the improper solicitation of clients and the misuse of its confidential information.

JPMorgan will sustain immediate and irreparable injury if a temporary restraining order is not issued.  As a result of Defendants' violations of their obligations, JPMorgan has suffered and will continue to suffer irreparable harm, and is entitled to a *status quo* temporary restraining order and a preliminary

injunction until a FINRA arbitration panel can determine JPMorgan's claims for permanent injunctive relief.

## C.   JPMORGAN IS ENTITLED TO A TEMPORARY INJUNCTION

### 1.   <u>Judicial Standard</u>

The requirements for injunctive relief are well-established.  In the Sixth Circuit, "a district court considers four factors: (1) the plaintiffs' likelihood of success on the merits, (2) whether the plaintiffs could suffer irreparable harm without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest."  <u>Yolton v. El Paso Tenn. Pipeline Co.</u>, 435 F.3d 571, 578 (6th Cir. 2006); <u>Golden v. Kelsey-Hayes Co.</u>, 73 F.3d 648, 653 (6th Cir. 1996).  <u>See</u> <u>also</u> <u>CIG Asset Mgmt. v. Bircoll</u>, No. 13-cv-13213, 2013 U.S. Dist. LEXIS 113696, at *3-4 (E.D. Mich. Aug. 13, 2013); <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran</u>, 67 F.Supp.2d 764, 773 (E.D. Mich. 1999).

As established below, the requirements for injunctive relief are met here, and therefore, a temporary injunction should be issued restraining Defendants from soliciting JPMorgan's clients and from using JPMorgan's confidential information. Such an order is necessary in order to preserve the *status quo* pending arbitration before FINRA.

**2.**     **Courts Have Uniformly Recognized The Right Of A Securities Firm To Injunctive Relief Under Similar Circumstances**

Courts considering circumstances similar to those here have repeatedly held in favor of injunctive relief to prohibit the solicitation of the former employer's clients or to protect the misappropriation of confidential client and trade secret information prior to an adjudication on the merits.  See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211 (7th Cir. 1993); Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 948 F.2d 128 (5th Cir. 1991) (per curiam), aff'd 777 F.Supp. 1349 (N.D. Tex. 1991); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 72 (10th Cir. 1986); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F.2d 1098 (5th Cir. 1981); Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1994 WL 900431 (E.D. Mich. 1994); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall, 836 F.Supp. 428, 430 (W.D. Mich. 1993).

In fact, JPMorgan has obtained injunctions from numerous courts, including this Court, enforcing the exact same or substantially similar contracts to the one at issue here and under substantially similar circumstances.  See Orders attached hereto as Exhibit 1 through Exhibit 10.  In view of the consistency with which courts have enforced such restrictions through temporary injunctive relief, JPMorgan's entitlement to such relief at this stage cannot be seriously disputed.

In accepting employment with JPMorgan, Defendants expressly promised in the Non-Solicitation Agreements and the Code of Conduct not to solicit JPMorgan's clients for a one year period after the termination of their employment and not to use or disclose JPMorgan's Confidential Client Information. Defendants, however, have violated their obligations to JPMorgan. JPMorgan does not seek to bar Defendants from earning a living. JPMorgan is merely attempting to protect its business from the improper solicitation of its clients and the misuse of its Confidential Client Information.

### 3.   JPMorgan Satisfies All Requirements For Injunctive Relief

#### a.   JPMorgan is Likely to Succeed on the Merits

JPMorgan is entitled to injunctive relief to prevent Defendants from violating their obligations to JPMorgan not to solicit JPMorgan's clients and from using JPMorgan's Confidential Client Information. Defendants expressly agreed not to solicit JPMorgan's clients for a period of one year following the termination of their employment. Further, Defendants had access to confidential and proprietary business and financial information concerning, inter alia, JPMorgan and its clients, which they expressly agreed not to disseminate or make use of, and to promptly return this information and materials after their affiliation with JPMorgan terminated. Defendants, however, have misused this confidential and proprietary business documents and information in violation of Michigan and New York law.

8

Federal and State courts in Michigan have recognized the right of financial services firms to obtain injunctive relief against former employees under similar circumstances.  See, e.g., Wells Fargo Advisors, LLC v. Carter, No. 1:09-cv-517, 2009 U.S. Dist. LEXIS 47672, at *2-3 (W.D. Mich. June 5, 2009); Kelly Services, Inc. v. Marzullo, 591 F. Supp. 2d 924 (E.D. Mich. 2008); Kelly Servs. v. Noretto, 495 F. Supp. 2d 645, 658 (E.D. Mich. 2007); Ran, 67 F.Supp.2d at 764; Lowry Computer Products, Inc. v. Head, 984 F. Supp. 1111, 1112 (E.D. Mich. 1997); Orbach, 1994 WL 900431; Superior Consulting Co., Inc. v. Walling, 851 F. Supp. 839 (E.D. Mich. 1994); Grall, 836 F. Supp. at 428.[1]

Michigan Statutes also protect an employer's trade secrets.  Under the Michigan Uniform Trade Secret Act, a "trade secret" is defined as information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

---

[1]   Defendant's Non-Solicitation Agreement is also enforceable under New York law, which is designated as the choice of law.  See, e.g., Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (granting a motion for preliminary injunction enjoining the defendant from soliciting its former employer's clients); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 162 (S.D.N.Y. 2006) (granting motion for preliminary injunction enjoining solicitation of the former employer's employees and use of confidential information or trade secrets); Muze, Inc. v. Digital On-Demand, Inc, 123 F.Supp. 2d 118 (S.D.N.Y. 2000) (determining that preliminary injunction was appropriate); OTG Mgt., LLC v Konstantinidis, 40 Misc. 3d 617, 622 (Sup. Ct. N.Y. Co. 2013) (granting motion for preliminary injunction enjoining solicitation of former employer's employees and customers); Ingenuit, LTD. v. Hariff, 33 A.D. 3d 589, 822 N.Y.S. 2d 301 (2d Dep't 2006) (injunction against soliciting clients and using proprietary information).

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Michigan Statute 445.1902(d) ("MUTSA").

JPMorgan's customer information falls squarely within these parameters.

In addition to the statutory factors, a court also examines:

> (1) extent to which information is known outside of owner's business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information, (4) value of information to owner and competitors, (5) amount of effort and money expended in developing information, and (6) ease or difficulty with which information could be properly acquired or duplicated by other.

Laethem Equip. Co. v. Deere & Co., 2007 U.S. Dist. LEXIS 65362, at *48 (E.D. Mich. Aug. 14, 2007); accord Noretto, 495 F. Supp. 2d at 658.  Based upon these factors, this Court denied defendants' motion to dismiss and granted plaintiff a preliminary injunction affording trade secret protection to the names and addresses of plaintiff's customers (and potential customers learned of during the former employee's employment with plaintiff) and customer-specific information.  See Noretto, 495 F. Supp. 2d at 658.  The result should be the same here.

In this case, JPMorgan's customer records and information qualify for trade secret protection.  Along with its employees, JPMorgan's client relationships are its most important assets.  JPMorgan's records contain (among other things) the names of customers, addresses and unique investment characteristics and financial data pertaining to its individual customers.  This information enabled JPMorgan to serve its customers effectively.  In addition, the information contained in JPMorgan's records is not readily available to the general public or JPMorgan's competitors from a telephone book, library, professional directory or other publicly available resource.  JPMorgan's competitors do not have access to and cannot independently obtain without a substantial expenditure of time, money and effort the totality of information that Defendants have taken.  Based on these facts, it is clear that JPMorgan's customer information and records derived independent economic value from not being known to the public or its competitors.

Furthermore, as detailed in the accompanying Baaki Declaration, JPMorgan employs reasonable efforts to maintain the confidentiality of its customer records. Specifically, access to the records is restricted to those employees whose jobs require them to refer to this information, duplication of the records is prohibited and there are constant reminders about the confidential nature of the information. Baaki Dec.¶ 50.

11

Michigan courts and courts throughout the country have routinely protected customer information and lists as trade secrets. See e.g., Kovarik v. American Family Insurance Group, 108 F.3d 962, 966 (8th Cir. 1997); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp, 2001 WL 810749 at *3 (N.D. Fla. July 16, 2001); Superior Consultant Co., Inc. v. Bailey, 2000 WL 1279161 (E.D. Mich. 2000); Ran, 67 F.Supp.2d at 764; Lowry Computer Products, Inc. v. Head, 984 F. Supp. at 1111; Orbach, 1994 WL 900431 at *5; Grall, 836 F. Supp. at 428; Lynch v. Silcox, 2001 WL 1200656 (S.D. Fla. Oct. 4, 2001); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty, 808 F.Supp. 1555, 1558 (S.D. Fla.1992), aff'd, 2 F.3d 405 (11th Cir. 1993); Ruscitto v. Merrill Lynch, 777 F.Supp. 1349 (N.D. Tex. 1991), aff'd, 948 F.2d 1286 (5th Cir. 1991).

In Merrill Lynch v. Ran, the contract at issue was a restrictive covenant barring defendants – for one year – "from soliciting Merrill Lynch clients who became known to them during their employment and from confiscating Merrill Lynch's customer records." 67 F.Supp.2d at 773. This Court upheld such restrictive covenant and granted plaintiff the temporary injunctive relief it requested, stating that "[s]imilar employment agreements have been routinely enforced" in Michigan. Id. See also Orbach, 1994 WL 900431; Grall, 836 F.Supp. at 428.

It is axiomatic then that JPMorgan has a legitimate interest in protecting the relationships it has forged with its clients and the confidential client information

entrusted to JPMorgan as a result of these relationships.   Indeed, JPMorgan's clients are its most important assets.

In sum, JPMorgan has made a sufficient showing to establish a likelihood and indeed probability of its ultimate success and Defendants should not be allowed to continue to violate their obligations and injure their former employer by soliciting JPMorgan's clients using JPMorgan confidential information.

**b.   In the Absence of an Injunction, JPMorgan will Suffer Irreparable Harm**

JPMorgan will be irreparably harmed by Defendants' refusal to return its Confidential Client Information, and by their continued improper solicitation of JPMorgan's clients.

This Court repeatedly has determined that the potential loss of clients would result in irreparable harm, entitling the plaintiff to injunctive relief.  <u>MLive Media Group v. Webber</u>, No. 14-cv-13148, 2014 U.S. Dist. LEXIS 123191, at *11-12 (E.D. Mich. Sept. 4, 2014) (granting injunctive relief and noting that "[l]oss of customer goodwill and fair competition can support a finding of irreparable harm"); <u>DeLaval, Inc. v. Schmitt</u>, 994 F.Supp.2d 883, 888-889 (W.D. Mich. 2014) (granting injunctive relief and noting that "if Schmitt is permitted to service DeLaval customers with whom Schmitt had a professional relationship during his employment at DeLaval, DeLaval would suffer irreparable harm from a loss of goodwill and client contacts."); <u>Monumental Life Ins. Co. v. Stokes</u>, No. 11-

14847, 2012 U.S. Dist. LEXIS 42849, at *14 (E.D. Mich. Mar. 28, 2012) (granting injunctive and finding irreparable harm relief based on the loss of fair competition and risk of losing potential business from customers); Victory Lane Quick Oil Change, Inc. v. Darwich, 799 F.Supp.2d 730, 736 (E.D. Mich. 2011) (granting injunctive relief and finding irreparable harm because "[t]he loss of fair competition and customer relationships that results from the breach of a non-compete agreement are the kinds of injuries for which monetary damages are difficult to calculate."); JPMorgan Chase Bank, N.A. v. Clark, No. 09-13815, 2009 U.S. Dist. LEXIS 89926, at *8 (E.D. Mich. Sept. 29, 2009) (granting injunctive relief and finding irreparable harm based on incalculable losses resulting from loss of clients the loss of client confidence); Key Safety Sys. v. Invista, S.A.R.L., L.L.C., No. 08-CV-10558, 2008 U.S. Dist. LEXIS 70117, at *33-34 (E.D. Mich. Sept. 16, 2008) (granting injunctive relief based on the risk of losing business relations with customers); Zimmer, Inc. v. Albring, No. 08-CV-12484, 2008 U.S. Dist. LEXIS 50089, at *23 (E.D. Mich. June 27, 2008) (granting a temporary restraining order in order to protect a former employer's "goodwill, its customer relationships, and its ability to compete").

Similarly, this Court repeatedly has determined that a defendant's continued use of misappropriated confidential information would result in irreparable harm, entitling the plaintiff to injunctive relief.  Fid. Brokerage Servs. LLC v. Busch, No.

14

14-10756, 2014 U.S. Dist. LEXIS 32823, at *2 (E.D. Mich. Mar. 7, 2014) (granting injunctive relief and finding irreparable harm because the former employer "will suffer irreparable harm if Busch and Executive Wealth Management, LLC are permitted to continue to misappropriate and use Fidelity's trade secret customer information"); Johnson Controls, Inc. v. Odom, No. 13-13443, 2013 U.S. Dist. LEXIS 114593, at *3 (E.D. Mich. Aug. 14, 2013) (granting injunctive relief because "plaintiff will be irreparably harmed by Defendant's disclosure, and continued disclosure, of Plaintiff's confidential information and/or trade secrets"); Kelly Services, Inc. v. Marzullo, 591 F.Supp.2d 924, 940 (E.D. Mich. 2008) (granting injunctive relief and noting that "the weakened ability to fairly compete that would result from disclosure of trade secrets and the breach of a non-compete agreement does establish irreparable injury"); Noretto, 495 F.Supp.2d at 659 (granting injunctive relief because "Noretto will continue to use Kelly's confidential information and trade secrets in violation of his contractual responsibilities to Kelly"); Henkel Corp. v. Cox, 386 F.Supp.2d 898, 904 (E.D. Mich. 2005) (granting injunctive relief and finding irreparable harm because "there is evidence of both threatened and actual misappropriation" of confidential and trade secret information that could cause "competitive losses and losses of customer goodwill").

15

Here, it is extremely difficult to quantify the future economic losses that JPMorgan will suffer from the loss of its clients and their accounts to a competitor. How many of these clients' accounts would have grown in the future or by how much JPMorgan cannot now calculate.  In addition, JPMorgan cannot quantify the loss of client confidence that will occur absent an injunction.  The loss of confidence will occur because Defendants have compromised JPMorgan's clients' reasonable expectation of privacy.

For all the reasons set forth above, the injury JPMorgan faces is irreparable and cannot later be compensated with money damages.

### c.    The Threatened Injury to JPMorgan Outweighs the Potential Harm to Defendants

The risk of irreparable harm to JPMorgan easily outweighs any injury to Defendants.  On the one hand, an injunction would safeguard JPMorgan's goodwill, business reputation, trade secrets, methods of business operation, the integrity of its Southeast Michigan offices, and its common law and contractual rights.   An injunction would also serve to discourage JPMorgan's current employees from breaching their contractual obligations, the Code of Conduct, their fiduciary duties and their duties of loyalty, in addition to deterring JPMorgan's competitors from inducing JPMorgan's employees to do so.

By contrast, Defendants have deliberately breached their commitments to JPMorgan by misappropriating JPMorgan's Confidential Client Information and

16

by soliciting JPMorgan customers to join their at Morgan Stanley.  As this Court, in a case similar to the instant one, has observed,

> [t]o deny the injunctive relief Merrill Lynch now seeks, a remedy specifically provided for in three of the four defendants' contracts, and required as to all of the defendants under the four factors discussed in this opinion, would amount to a nullification of defendants' employment agreements. Such a result would create an incentive for other brokers to violate their agreements without fear of reprisal.

Ran, 67 F.Supp.2d at 780.

Equity mandates that Defendants should be prohibited from profiting from their wrongful conduct.  This Court, in Orbach, applied that equitable maxim and enjoined acceptance of wrongfully solicited business, finding that to allow former employees to preemptively breach their legal obligations before their employers can seek relief in court, and then to allow these employees to profit by their own opportunistic wrongdoing, would promote deliberate breaches of contract and misappropriation of trade secrets:

> [T]o permit Petitioner to accept business from these clients would allow Petitioner to reap the benefit of his blatant disregard of his contractual obligations, and reward Petitioner for providing information to PaineWebber while he was still employed at Merrill Lynch. The practical effect of such an order cannot be overlooked. As the parties have indicated to this Court, and as is evidenced by the myriad of decisions in this area of the law, this precise factual and legal issue is oft repeated.  Allowing Petitioner to accept business from these clients on the basis of the language in the Agreement, would encourage, and sanction,

17

> future parties in Petitioner's position to breach his
> contractual duties as much as possible, because the more
> clients which can be solicited before an injunction is
> entered, the more clients Petitioner will be able to have
> transferred.

1994 WL 900431 (emphasis added).

Preventing Defendants from soliciting JPMorgan clients and using JPMorgan's confidential client information subjects them to no undue hardship. The loss to JPMorgan, then, greatly outweighs any potential harm to Defendants. On the other hand, Defendants have deliberately breached their obligations to JPMorgan by soliciting customers to join them at a competitor and by using and disclosing JPMorgan's confidential information to do so.

Defendants will not be precluded from engaging in their chosen profession. The injunction sought merely precludes Defendants from doing so in violation of their obligations to JPMorgan. Thus, Defendants would be able to provide services to any company, including Morgan Stanley, as long as they do not use JPMorgan's confidential information or solicit JPMorgan's clients in accordance with their contractual obligations. The injunction will only require Defendants to compete fairly. Therefore, the balancing of the equities lies in JPMorgan's favor; thus, an injunction should be granted.

### d.     An Injunction will not Harm the Public Interest

Finally, the only public interest at issue in this case is that of enforcing reasonable contracts and protecting a business's investment in its development. This Court has consistently recognized the public's interest in the enforcement of reasonable contracts and in "'the maintenance of standards of commercial ethics.'" Uniform Law Comment, Uniform Trade Secrets Act (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974)).

Accordingly, the public interest is served by issuance of the preliminary injunction that JPMorgan seeks.  See Victory Lane Quick Oil Change, Inc. v. Darwich, 799 F.Supp.2d 730, 737 (E.D. Mich. 2011) ("Enforcement of contractual duties is in the public interest.").  Indeed, the Sixth Circuit has stated that the public has an interest in "hold[ing] Defendants to the terms of the bargain they entered into." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (granting a preliminary injunction); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman, 1996 WL 707107, at *3 (D. Kan. Oct. 1, 1996) ("[T]here is a strong public interest in favor of protecting trade secrets"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, 816 F.Supp. 1242, 1248 (N.D. Ohio 1992) ("To deny injunctive relief in this case would . . . jeopardize the integrity of the securities industry and to the detriment of

the public interest [and] . . . would cast doubt on the integrity of contractual agreements").

As a court in Illinois observed in a case involving another securities firm's agreements with its registered representatives, "[t]he public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records." IDS Life Insurance Co. v. SunAmerica, Inc., 958 F.Supp. 1258, 1282 (N.D. Ill. 1997), aff'd in part, vac. in part on other grounds, 136 F.3d 537 (7th Cir. 1998). Consequently, the court explained, "the public's interest has been disserved by defendants' actions" because "[t]he public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior." Id.

The rationale behind these cases and countless others is that a former employee should not be able to injure their former employer and profit from their wrongdoing. The analysis and result should be the same here.

### III.   CONCLUSION AND PRAYER

JPMorgan is simply asking that the Court enter a Temporary Restraining Order requiring Defendants to adhere to their obligations to JPMorgan pursuant to their Non-Solicitation Agreements and the Code of Conduct, and prohibit them from soliciting JPMorgan's clients and using or disclosing JPMorgan's Confidential Client Information, until an evidentiary hearing may be held.

20

Accordingly, JPMorgan requests that the Court grant its application and enter a Temporary Restraining Order.

Thereafter, JPMorgan requests for the reasons stated above, that JPMorgan's motion for a preliminary injunction be granted, pending a final determination in the FINRA arbitration between JPMorgan and Defendants on JPMorgan's claims for permanent injunctive relief.

Dated:  May 29, 2015                    Respectfully submitted

                                        ABBOTT NICHOLSON, P.C.
                                        By:  /s/ Timothy J. Kramer
                                             Timothy J. Kramer (P36223)
                                             Daniel G. Kielczewski (P42875)
                                             300 River Place, Suite 3000
                                             Detroit, Michigan 48207
                                             (313) 566-2500

                                        PADUANO & WEINTRAUB LLP
                                        Leonard Weintraub (Reg. No. 2161479)
                                        1251 Avenue of the Americas, 9th Fl
                                        New York, New York 10020
                                        (212) 785-9100

                                        *Attorneys for Plaintiffs*
                                        JPMorgan Chase Bank, N.A. and
                                        J.P. Morgan Securities LLC

4814-4531-6132, v. 1