UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A. and
J.P. MORGAN SECURITIES LLC,

    Plaintiffs,

                                                        Case No. 15-11929

v.

                                                        HONORABLE DENISE PAGE HOOD

DANIEL J. WIRTANEN, JR. and
AIMEE S. O'DONNELL,

    Defendants.
_____/

**ORDER MOOTING PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER, GRANTING
MOTION FOR PRELIMINARY INJUNCTION
AND MOOTING MOTION FOR EXPEDITED DISCOVERY**

**I.    BACKGROUND**

This matter is before the Court on a Motion for Temporary Restraining Order, Preliminary Injunction and an Order Permitting Expedited Discovery filed by Plaintiffs JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC (collectively, "Plaintiffs" or "JPMorgan") filed May 29, 2015. Plaintiffs seek an order to enjoin Defendants Daniel J. Wirtanen, Jr. ("Wirtanen") and Aimee S. O'Donnell ("O'Donnell") from soliciting JPMorgan's customers and from using and disclosing JPMorgan's trade secrets and confidential and proprietary information, including customer lists. Plaintiffs claim Defendants have violated their express contractual

obligations to Plaintiffs.

Plaintiffs' Complaint against Defendants seeks injunctive relief pending arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA"). (Comp., ¶ 1) Plaintiffs allege the eight counts: 1) Breach of Contract; 2) Misappropriation of Trade Secrets; 3) Breach of Fiduciary Duty; 4) Breach of Duty of Loyalty; 5) Intentional Interference with Actual and Prospective Economic Advantages; 6) Negligent Interference with Actual and Prospective Economic Advantages; 7) Conversion; and, 8) Unfair Competition.

Defendants were employed in a JPMorgan Chase bank branch in Grosse Pointe, Michigan until Defendants voluntarily resigned on May 22, 2015. (Comp., ¶ 2) Later that day, Defendants became affiliated with Morgan Stanley Smith Barney LLC ("Morgan Stanley"), in its Grosse Pointe Farms, Michigan office. (*Id.*) Plaintiffs allege that prior to their resignation, Defendants informed JPMorgan clients they were going to Morgan Stanley and that Defendants misappropriated confidential and proprietary JPMorgan customer contact information. (Comp., ¶ 3) Upon joining their new firm, Defendants have aggressively solicited JPMorgan clients to transfer their accounts to Defendants' new firm, Morgan Stanley. (Comp., ¶¶ 3-4) Plaintiffs assert that without misappropriating from JPMorgan confidential client contact information, including cell phone numbers, Defendants would have been unable to engage in such

improper solicitation. (Comp., ¶ 5) Defendants' improper solicitation has jeopardized Plaintiffs' relationships with its clients, including at least eight JPMorgan clients who have informed Plaintiffs that they intend to move their accounts (collectively in excess of $3 million) to Defendants at Morgan Stanley. (Comp., ¶ 6)

On January 24, 2012, Wirtanen entered into a Chase Wealth Management Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement with JPMorgan. (Comp., ¶ 22) Wirtanen is required to maintain the confidentiality of JPMorgan's confidential customer information and a restrictive covenant prohibiting him from soliciting JPMorgan clients for a one year period after his employment with JPMorgan terminates for any reason. (Comp., ¶ 22)

On June 7, 2010, O'Donnell entered into a Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement with JPMorgan. (Comp., ¶ 24) O'Donnell is required to maintain the confidentiality of JPMorgan's confidential customer information and a restrictive covenant prohibiting her from soliciting JPMorgan clients for a one year period after employment with JPMorgan terminates for any reason. (Comp., ¶ 24)

JPMorgan claims it has invested substantial time and money, totaling millions of dollars, to acquire, develop and maintain its customers over many years. But for Defendants' employment with JPMorgan, Defendants would not have had any contact

with any of the clients the firm assigned to them. (Comp., ¶ 28)

On the same date the Complaint and instant motion were filed, Plaintiffs' counsel informed the Court that defense counsel representing both Defendants was notified regarding the filing of the Complaint and the instant motion. Defendants filed a response to Plaintiffs' motion on June 1, 2015. The parties agreed to hold a hearing on June 2, 2015.

## II.  ANALYSIS

### A.  Standard of Review

The Federal Rules of Civil Procedure provides for preliminary injunctions with notice under Rule 65(a) and temporary restraining orders without notice under Rule 65(b). Fed. R. Civ. P. 65; *Deleon v. Hamilton County Sheriff's Dep't*, Case No. 1:12-CV-68, 2012 WL 3116280 at *13 (E.D. Tenn. Jul 31, 2012); *Walnut Private Equity Fund, L.P. v. Argo Tea, Inc.*, Case No. 1:11-cv-770, 2011 WL 6013000 at *9 (S.D. Ohio Dec. 2, 2011) (Because defendants are on notice, the court treats the plaintiff's motion as a motion for a preliminary injunction rather than a motion for a temporary restraining order.). Given that Plaintiffs provided Defendants with notice of the instant motion and Plaintiffs have filed a response, the Court considers Plaintiffs' Motion as a Motion for Preliminary Injunction under Rule 65(a) instead of a Motion for a Temporary Restraining Order under Rule 65(b).

"The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Fed. R. Civ. P. 65(a): 1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). The first factor is the most critical inquiry of the four criteria. *Mason Cnty. Med. Ass'n v. Knebel,* 563 F.22d 256, 261 (6th Cir. 1977). In making its determination the "district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir. 1997). Courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration. *Am. Exp. Fin. Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052-54 (2d Cir. 1990) (The expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits.); *Wells*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 919 F. Supp. 1047, 1051 (E.D. Ky. 1994).

### B. Plaintiffs' Likelihood of Success on the Merits

For purposes of this motion, the Court considers the merits under the laws of New York, in light of the contractual provision that New York law applies. (Doc. No. 5, Pg ID 225, 231, 243) The first claim in this action is a breach of contract claim. The agreements at issue contain non-solicitation clauses. The agreement signed by Wirtanen sets forth confidentiality and non-solicitation provisions, as follows:

> 7.b. In addition to any description contained in the Code of Conduct, such Confidential Information concerning the business of JPMC includes, but not limited to:
>
> > I. names, addresses and telephone numbers of clients and prospects ...
>
> * * *
>
> e. ... If ... you cease to be employed by JPMC for any reason, ... immediately return to JPMC all documents, materials or property you were allowed use of, including, ... any information derived from any JPMC source stored on any personal electronic devices (e.g. PDAs, cell phones, personal computers), ...
>
> * * *
>
> 8.a. ... [Y]ou understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that

> of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave or divert from doing business with JPMC, any then current clients, ... that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such clients ..."

(Pg ID 224, 229) O'Donnell's agreement also contained identical confidentiality and non-solicitation provisions. (Pg ID 241) Courts have held that such confidentiality and non-solicitation agreements are valid. *Wells,* 919 F. Supp. at 1051 (collecting cases) (the court finding that plaintiff demonstrated a reasonable likelihood of success on the merits and expounding further on the merits of each of the parties' arguments would be to engage in the work of the arbitration panel).

New York law provides that an employer retains "a legitimate interest in preventing former employees from exploiting ... the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment." *Scott, Strackrow & Co., CPA's v. Skavina*, 9 A.D. 805, 806, 780 N.Y.S.2d 675 (2004). A non-solicitation provision will be rejected as overly broad, if it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment or if the covenant extends to personal clients recruited through the employee's independent efforts. *Id.*

The declaration of Nichole M. Baaki, Executive Director for Plaintiffs, assert that Defendants have solicited JPMorgan clients and that clients have informed the firm that Defendants are aggressively soliciting them to move their accounts to Morgan Stanley. (Pg ID 191-92) Wirtanen's affidavit asserts that he did not "presolicit" any clients to move accounts to Morgan Stanley. (Pg ID 405) He further asserts that client cell phone numbers are not JPMorgan's property and that clients frequently contact him on his cell phone repeatedly. (Pg ID 406) Wirtanen claims he was able to save the clients' cell phone numbers. (Pg ID 406) Wirtanen asserts that he obtained client information from publicly available sources after he joined Morgan Stanley or from the clients themselves and that he use this "basic client information" to "announce" his new affiliation with Morgan Stanley. (Pg ID 406) Wirtanen claims he had the right to do so and he did not create or retain a protocol list and that he did not solicit any clients to transfer accounts from JPMorgan to Morgan Stanley. (Pg ID 406) Wirtanen states that if clients decide to transfer their investment accounts to another firm, JPMorgan is not necessarily losing its relationships with the clients since they have other account relationships with JPMorgan, such as checking, savings, loans and credit cards. (Pg ID 407) Wirtanen claims that to enjoin him from providing services to his clients would unnecessarily and improperly infringe on the clients' exercise of choice in the person with whom the clients deals. (Pg ID 407)

O'Donnell asserts she did not solicit any of her clients to transfer their accounts from JPMorgan to Morgan Stanley. (Pg ID 410) She claims that client cell phone numbers are not JPMorgan's property and that clients frequently contacted her on her cell phone and that she was able to easily save those numbers. (Pg ID 411) O'Donnell claims that to the extent she obtained client information, she obtained those from publicly available sources after she joined Morgan Stanley, or from the clients themselves. (Pg ID 411) O'Donnell asserts that she used this basic client information to announce her new affiliation with Morgan Stanley and that she believed she had the right to do so. (Pg ID 411) O'Donnell states that she did not create or retain a protocol list and did not solicit any clients to transfer their accounts from JPMorgan to Morgan Stanley. (Pg ID 411) She states that an account transfer by a client will not automatically result in the end of JPMorgan's relationship with the client because the clients still have checking, savings, loans or credit card accounts with JPMorgan. (Pg ID 412) O'Donnell claims that the restraining order sought by JPMorgan would deprive her of the opportunity to work with clients whose business has supported her family and would be devastating to her career and family. (Pg ID 412)

Defendants further assert that JPMorgan and Morgan Stanley have adopted the Protocol for Broker Recruiting ("Protocol") which sets the industry standard as to the information that a departing advisor may retain when he or she moves from one firm

to another. (Pg ID 303) They argue that the Protocol specifically allows a departing advisor to take certain account information, including client name, address, phone number, email address and account title. Defendants claim that the Protocol also allows the departing advisors who comply to solicit customers that they serviced while at their former firms. Morgan Stanley joined the Protocol on November 1, 2006 and JPMorgan adopted by way of a letter on February 6, 2014. Defendants also argue that FINRA does not allow interference of customer accounts in the context of employment disputes under FINRA Rule 2140.

Based on the submissions by the parties, Plaintiffs have shown that they would prevail on the merits on their breach of contract claim. Although Defendants assert they have not solicited clients, they also assert that they believed it was their right and their clients' right to contact each other. The confidentiality provisions provide that Defendants immediately return to Plaintiffs all materials and information derived from any of Plaintiffs' sources stored on personal devices, including cell phones. Defendants do not dispute that but for their employment with Plaintiffs, the clients' phone numbers, stored in their cell phones, would not have been available to Defendants.

As to the Protocol argument by Defendants, there are specific steps an employee must perform prior to leaving a firm. "Resignations will be in writing

delivered to local branch management and shall include a copy of the Client Information that the RR [employee] is taking with him or her. The RR list delivered to the branch also shall include the account numbers for the clients serviced by the RR." (Protocol, Resp. Ex. A, Pg ID 318) The principal goal of the protocol is to further the clients' interests of privacy and freedom of choice in connection with movement of their "Registered Representatives." *Ameriprise Fin. Serv., Inc. v. Koenig,* 2012 WL 379940 at *1 (D.N.J. Feb. 6, 2012). Employees that comply with the Protocol would then be free to solicit customers that they serviced while at their former firms, but only after they have joined the new firms. *Id.* An employer would be free to enforce whatever contractual, statutory or common law restrictions that exist on the solicitation of customers to move their accounts by a departing employee before he or she has left the firm. *Id.*

Defendants' affidavits do not assert that they followed the Protocol requirement that they were to deliver a list to their former employer as to which accounts/clients they were going to take with them. In fact, Defendants' affidavits assert that they did not retain client information of clients they serviced while at JPMorgan, but instead obtained client information from public sources. Wirtanen's affidavit specifically asserts that he did not "invoke the protections of the Protocol ..." (Pg ID 405) These statements are contrary to the Protocol where employees are able to move with certain

clients as long as the former employers are aware which clients the employees plan to solicit after the employees move to another firm. Defendants have not shown at this stage that they properly followed the Protocol. The likely to succeed factor weighs in favor of Plaintiffs.

### C. Irreparable Injury

Regarding the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* at 512. The loss of fair competition that results from the breach of a non-competition covenant is also likely to irreparably harm an employer. *Id.*

The Court finds that Plaintiffs have shown through their Complaint, briefs and documents submitted, that Plaintiffs would suffer immediate and irreparable harm if an injunction is not entered. Plaintiffs' harm includes goodwill with its clients and breaches of the confidentiality and non-solicitation agreements signed by Defendants. Plaintiffs have shown that Defendants are now employed with Plaintiffs' direct

competitor, Morgan Stanley. Plaintiffs have further shown that Defendants have in fact solicited Plaintiffs' customers prior to leaving Plaintiffs' employ, contrary to the Protocol. Some of these customers have already indicated to Plaintiffs they were moving their accounts to Defendants' current employer, Morgan Stanley.

Defendants argue that the same arguments were raised before the district court in the Western District of Michigan where the court found the issue was only monetary damages, therefore JPMorgan did not suffer irreparable injury. (Resp., Ex. H, Pg ID 345-360) The Court does not find the district court's oral ruling persuasive because this Court finds, as noted above, that the loss of customer goodwill and fair competition are irreparable. As noted above, although the Protocol allows brokers to move from one firm to another and solicit clients, certain procedures must be follow in order to put the former employer on notice. Defendants have not shown that they followed these procedures under the Protocol. The irreparable injury factor weighs in Plaintiffs' favor.

### D.   Harm to Others and Public Interest

As to harm to others, based on Defendants' affidavits, they claim they would be harmed if they are not able to respond to former clients. However, such harm would not have occurred if Defendants had followed the procedures set forth in the Protocol by notifying Plaintiffs which clients they intended to solicit once they were

employed by another firm. Defendants' arguments regarding their ability to contact clients may show their intent of taking away clients from JPMorgan to their new employer. This factor does not weigh in either party's favor.

Regarding public interest, the public has an interest in the enforcement of contracts and also in the freedom to select a broker. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran*, 67 F. Supp. 2d 764, 781 (E.D. Mich. 1999). The public also has an interest in keeping client lists confidential information. *Id.* at 775. As to FINRA Rule 2140, the rule is indicative of a public policy to allow the free transfer of accounts. *Ayco Co. v. L.P. v. Feldman,* 2010 WL 4286154 at *10 (N.D. N.Y. Oct. 22, 2010). As noted above, it does not appear that Defendants followed the Protocol as to how client accounts are transferred. This factor does not weigh in either party's favor.

Weighing the factors noted above, because Plaintiffs have shown they will prevail on the merits and they are or will be irreparably harmed, a preliminary injunction is issued in this matter pending the arbitration in this matter under FINRA.

### III. <u>CONCLUSION</u>

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order is MOOT, the Motion for Preliminary Injunction is GRANTED pending arbitration, and

the Motion Permitting Expedited Discovery pending preliminary injunction hearing is MOOT **(Doc. No. 2)**.

IT IS FURTHER ORDERED that Plaintiffs must post security to cover costs and damages in the amount of $50,000.

IT IS FURTHER ORDERED that Defendants are enjoined as follows:

1. Defendants and all those acting in concert with them, including, but not limited to, the directors, officers, employees and agents of Morgan Stanley, are temporarily enjoined and restrained, directly or indirectly, from:

> (a) soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan customer serviced by Defendants at JPMorgan or whose name became known to Defendant by virtue of their employment with JPMorgan (or any of its predecessors in interest); and
>
> (b) using, disclosing or transmitting for any purpose JPMorgan's documents, materials and/or confidential and proprietary information pertaining to JPMorgan, JPMorgan's employees, and/or JPMorgan's clients.

2. Defendants, and all those acting in concert with them, including, but not limited to, the directors, officers, employees and agents of Morgan Stanley, are further ordered to return to JPMorgan or its counsel all records, documents and/or information in whatever form (whether original, copied, computerized, electronically stored or handwritten), pertaining to JPMorgan's customers, employees and business,

15

within 24 hours of notice to Defendants or their counsel of the terms of this Order;

3. This Preliminary Injunction is binding upon Defendants, their agents, servants, employer, any entity with which they are employed or affiliated, and those in active concert or participation with them who receive actual notice of this Order;

4. The parties are directed to proceed with arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

                          S/Denise Page Hood
                          Denise Page Hood
                          United States District Judge

Dated: June 3, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 3, 2015, by electronic and/or ordinary mail.

                          S/LaShawn R. Saulsberry
                          Case Manager